17-60543 Acosta v. Hensel Phelps Construction 17-60543 Acosta v. Hensel Phelps Construction Party is ready to proceed. Appellant. Good morning, Your Honor. May it please the Court. I'm Amy Tryon for the Secretary of Labor. The central issue in this case is the permissibility of multi-employer OSHA citations in the Fifth Circuit. In the Mellorine case in 1981, this Court acknowledged that whether the OSHA Act permits of such citations is a question that's arguable both ways. This Court analyzed the statute and determined that, in its view, the better answer was no. In the years since Mellorine, however, the Supreme Court has made clear, in Chevron and in Meade, that when you have a question of statutory interpretation that can go either way, and when an agency exercises its congressionally delegated lawmaking authority to reasonably interpret that ambiguity, the agency's interpretation is entitled to deference. The Supreme Court has further specified, in the CF&I case, that when the Secretary of Labor issues a citation to an employer for violating a health and safety standard, as it did in this case, that citation is an exercise of delegated lawmaking authority, and the interpretations contained therein are entitled to deference if reasonable. Now, in Mellorine, this Court did not consider the Secretary's interpretation relating to multi-employer citations. The Secretary wasn't a party to that case. For that reason, and because of the intervening Supreme Court decisions, Mellorine should not be binding on this panel for this case. The standard in this circuit is that earlier panel decisions can be revisited if an intervening Supreme Court or en banc decision fundamentally changes the focus of the analysis required to answer the question. And Chevron and CF&I satisfy that standard in this case. And furthermore, in Brand X, the Supreme Court held that pre-Chevron precedents, which Mellorine is one of, should be revisited using Chevron's lens, unless that earlier decision stated, well, the statute's totally unambiguous. And Mellorine didn't say that. To the contrary. Now, of course, the Secretary... They did actually consider the Commission's views in Mellorine, right? I mean, they discussed the dissent. I understand the Commission wasn't, that OSHA wasn't a party in that case, but they do get into the Commission's decisions. Well, Mellorine relied on a previous decision, Southeast Contractors. And Southeast Contractors' Fifth Circuit decision was a one-paragraph case in which the court adopted the, it said, we adopt the reasoning, we agree with the reasoning of this dissent in, that the Commission, one of the Commissioners had dissented in the Southeast Contractors' case. And the Fifth Circuit said, we agree with that reasoning. But first of all, that's the dissenting, that's the opinion of the Commission, which is not the same thing as the opinion of the Secretary. CF&I addresses that. CF&I was about who was entitled to deference, the Commissioner or the Secretary. And so I think, I also think that in our brief discusses why Southeast Contractors is not on point for a variety of other reasons, but I think that would be a distraction to get into that now. But of course, the Secretary's interpretation here today is only entitled to deference if it's reasonable. And I'd like to explain why we think it is reasonable and why we urge this court to join the seven other circuits that have upheld multi-employer citations as a lawful exercise of the Secretary's authority. Some of those cases have focused on the statute and some have focused on the regulation. What do you think's, it seems to me you're pushing more the statute, but what do you think's the better position for your side? The authority comes from the statute itself. And the regulation, so of the seven cases that the other seven circuits that have discussed this, only one has discussed the regulation at issue which I didn't talk about. The Eighth Circuit, Solis, right? And that's because in that case the employer raised 1910.12a as a defense and said the multi-employer doctrine is inconsistent with 1910.12a and the Eighth Circuit disagreed. And so we think, we obviously agree with that Eighth Circuit decision and we think that that regulation supports the Secretary's interpretation, but the authority comes from the statute. So the Section 5a of the OSH Act imposes two obligations on employers. The first is the General Duty Clause which says and talks about recognized hazards in the workplace. And it says that it ties an employer's duty to remove recognized hazards from the workplace to his own employees. It says each employer shall provide to his employees a workplace free from recognized hazards that could cause death or serious physical harm to his employees. So twice in there is that tie. Section 5a.2 says, sometimes called the Specific Duty Clause, says employers shall comply with occupational safety and health standards promulgated under the Act, period. That's it. There's no mention or tie of whose employees have to be affected, whose employees, you know, no connection there between the employer and the employees. And so stopping right there, the statute isn't clear about whether multi-employer citations are or aren't allowed under 5a, but you can draw the inference that 5a.2 means something different, something broader than Section 5a.1 does. And indeed, over the past 47 years, since just after the Act was passed, the Secretary has consistently taken the position that Section 5a.2 permits the citation of employers such as Hensel Phelps, who are general contractors on work sites and who have the control, the access, the authority at the work site to prevent violations. And that consistency over time points to reasonableness. In this case, Hensel Phelps was the general contractor at the library site and had undisputed authority to prevent the subcontractor's employees from being exposed to the unsafe excavation, either by halting the work or by ensuring that the proper protective systems were put in place. There's one more aspect of the statute I'd like to talk about before turning to the regulation, and that's the definition section in the Act and the definition of safety and health standards found in Section 3.8 of the Act. And that defines a standard as requiring conditions or practices necessary to provide safe or healthful employment and places of employment. That's a phrase that also occurs in the regulation. The Secretary interprets those two phrases, employment and places of employment, to mean two different things, and to extend an employer's obligation from not only protecting the employment of his own employees, but protecting his employees' places of employment, places such as the library work site in this case, even if the hazards there endanger a different employer's employees. With the test being control, you have to control the place of employment? That's the approach that the Secretary has taken, yes, to have the control, the access, the authority to, and the knowledge, which is also always an element in an OSHA case. And here the supervisors from Hensel Phelps were standing right next to the unsafe excavation. They were watching the subcontractor's employees work right beneath this unsecured excavation wall. And it's undisputed that they had the power to say, stop this work, or we need to put in a protective thing. They didn't do anything. But it was their work site, that's the point. It was their work site that they were in charge of the entire project. Now I understand that Hensel Phelps and its amigas have a different interpretation of what employment versus places of employment mean. And there may well be other ways to look at those two phrases. But the question for this court under Chevron, CFNI, and Brand X, is whether the Secretary's interpretation is reasonable. And if so, it's entitled to deference. So turning now to the regulation Your Honor mentioned, 29 CFR 1910.12a. That regulation, OSHA used that regulation in 1971, shortly after the OSHA Act was passed, to adopt pre-existing construction standards. There was an act called the Construction Safety Act that applied only to, it was safety standards, but it applied only to construction employers who had contracts with the federal government. And one purpose of the OSHA Act was to expand coverage from just those kinds of employers to all employers. So the regulation states that these pre-existing construction standards are adopted as OSHA standards. And that those standards apply to every employment and place of employment of every employee engaged in construction work. And further, that each employer shall protect the employment and places of employment of each of his employees by complying with these standards. And the excavation standard in this case is one of those standards. In other words, employers have to comply with the standards. And they need to do so, number one, to protect their own employees' employment. And number two, to protect their employees' places of employment. And this comes up most often in construction, because construction worksites, there's often many different employers in play.  That might then end up endangering only another employer's employees. And our final reason why the Secretary's interpretation is reasonable is that it furthers the purpose of the OSHA Act. And now that's a broad purpose, but it's a clear and confident purpose to provide safe and healthful employment for America's working men and women. Again, using the facts of this case as an example, the Hensel Phelps employers were right there observing the unsafe work. They had the power to stop it. And they didn't do anything. And given the broad language of Section 582, the purpose of the statute to make workers safer, and the Secretary's longstanding use of multi-employer citations, it was reasonable for the Secretary to cite Hensel Phelps for violating the excavation standard in this case. What is the value in having the Secretary interpret this as opposed to the court if the statute is unclear? Isn't the agency better positioned to make that interpretation as opposed to a court? Well, I think that's what Chevron and Mead and CF and I have said, is that when you have an issue of statutory interpretation that's within an agency's purview in their area of specialty. And to that point, I think it's worth noting that the OSHA specifically charges the Secretary with, first of all, promulgating safety and health standards. And second of all, issuing citations to enforce them. That's in the statute. That's the enforcement scheme that Congress came up with. And so, I mean, certainly it's for this court to identify whether there's an ambiguity in the statute, and if there isn't, then... Well, if we do determine that it exists, it seems to me that, as you've pointed out from the Chevron case and others, that the Secretary would be better positioned to resolve that as opposed to us due to the specialty of the agency involved. Well, yes, Your Honor, we agree with that. And as I mentioned, for 47 years the Secretary has consistently held the interpretation that under certain circumstances, I mean, nobody's saying that an employer who was, you know, 500 miles away and had nothing to do with this library project should have to have come by and checked the excavations. But there's a very strong connection here. I mean, Hensel Phelps was the general contractor. They supervised. They were in charge of the entire thing. And they were right there, and they knew about it. And the one interesting fact from the case, and the facts were all stipulated to here, and there wasn't a hearing, but one interesting fact from the case is that the subcontractor sent an email to an intermediary who then passed it along to Hensel Phelps the morning that the citation occurred and said, I'm concerned about rain. It's raining. We're placing rebar in the mud. I'm concerned about this rain. And he didn't mention the excavation specifically. He said he was concerned about rain and mud. But the result was that Hensel Phelps backed down the chain, and said, get back to work. And the subcontractor did. And that's why these issues are so pervasive in the construction. Well, in this case, it seems that the interpretation of the statute by holding the general contractor accountable would promote safety, which would be in favor of what the statute is intended to do in the first place, would it not? We certainly agree, Your Honor, and that's one of the reasons that we're putting forth for why the interpretation is reasonable. Again, it is a broad purpose, the OSHAC, to promote and ensure worker safety and health. But that's what OSHA's job is, and that's why the Secretary has interpreted it this way. Yes, Your Honor. On this question of Chevron deference, you rely on the Martin case from 1991 that says the enforcement act itself is the agency's action, the Secretary's action. The other side says that Meade, which came many years later, changes that principle, and Meade requires more formal agency action, which is, at least that's how I read their argument. How do you respond to that? Well, Your Honor, I think that even though Meade was later in time,  their action is entitled to deference if it's an exercise of lawmaking authority, and there's different ways that, depending on the agency structure, there's different ways that that could happen. It could be a rulemaking. It could be sort of an administrative adjudication kind of thing, depending on the agency setup. But turning back to the Martin case, what Martin made clear is that, so the Osh Act specifically says, Secretary, you are authorized to promulgate safety and health regulations. And it also says, Secretary, you are authorized, indeed commanded, to enforce these by issuing citations. And so what CF and I, the Martin case said, was that that exercise, that act of issuing a citation, is an exercise of the Secretary's delegated lawmaking authority, just as much as it would be if the Secretary promulgated a safety and health regulation. And it made clear that it's not, there's some talk about the Secretary asking for deference to a litigating position. This is not, and again, CF and I made this clear, this is not just the Secretary's litigating position just because it happens to come out in the course of these enforcement proceedings. This is what the Secretary does and is charged to do by the statute, is issue these enforcement citations. If there are no further questions, I've saved a few minutes for rebuttal. All right, thank you. Thank you. May it please the Court, I'm Michael Abkarian for respondent, Hensel Phelps Construction Company. There's a narrow ground on which this case can be decided, and we think it's proper and perhaps should be decided on that narrow ground. And it's an issue that I think the Secretary has avoided in this case. And in earlier questions, I heard the notion of, well, where are we on the scope regulations or the enabling regulations? And tying back to the Fifth Circuit's Mellorine case, this Court made a finding in that case that the twin of the regulation at issue here, which is Section 1912, explicitly confines liability to the employment relationship. So the Court very thoughtfully used the word explicitly. I look back at the Secretary's brief, the word explicitly doesn't even appear. Now that appears on 659 Fed Second 712. The Court's use of explicitly makes it unnecessary to revisit any statutory issue in this case or really to decide any deference issue, because we have a panel construction of the enabling regulation that OSHA is litigating here, the Secretary is litigating. Now, if that's true, if that is correct, and we certainly believe it is, the only question that really remains in this case is whether the Eighth Circuit's view of Section 1910.12 in summit contractors is so weighty as to convince this Court to reverse or modify that portion of the Mellorine decision. We contend that the Eighth Circuit's reasoning and justification is not that weighty, and Mellorine should not be reversed and is fully applicable. Now, first, with respect to the Eighth Circuit, all due respect, the Eighth Circuit, in the summit contractor's case, completely overlooked the most salient feature of Section 1910.12, which is that OSHA borrowed the phrase his employees into that regulation from the OSHA Act's general duty clause, which everybody, including OSHA, agrees confines liability to the employment relationship. The only reason OSHA would have done that is because immediately after passage of the Act, it understood that Congress intended to confine responsibility under the Act to the employment relationship only and employers' own employees. And for further evidence or proof or understanding of that, and that OSHA so believed it, is during the earliest days of the OSHA Act, OSHA failed to adapt the general contractor liability rules of Section 1926.16. The Secretary's counsel alluded to the fact that this particular regulation was derived from earlier regulations. And those included expansion of liability to contractors and subcontractors specifically. OSHA rejected that approach in its early days of construing the Act. And early constructions of the Act should be considered important, because if OSHA is changing its view now, why wasn't that the law when the Act first came out? Why wasn't that the regulatory and enforcement approach? And indeed included in its own early field operations manuals, there was no controlling employer liability. There was creating... But it has been that case for decades. This test they're applying now has been in place for a number of years. It's not something that changed with the recent election or something like that. No, no, absolutely not. The current interpretation, I think it's been around since 1999, the current formulation of the Multi-Employer Citation Policy. But if you look back, and it is certainly well documented in our brief and the brief of our Amici, the Department of Labor has flip-flopped in the years following the passage of the Act on who gets notified and cited for what. Controlling employer concept under the Multi-Employer Citation Policy came way downstream. It wasn't in the first interpretations and the first enforcement manuals from OSHA. Notification was just given to controlling employers. The subcontractor on a work site may have created or exposed employees to a hazard. So when the secretary argues this has been a consistent policy, we would urge the court, of course, to look at the historical recapitulations in the briefs. That is not correct. That is not true. What's concerning about this particular fact pattern is that the appellee was on the work site and saw the danger that was present. Under your reading, simply because the appellee did not have someone working directly there and admittedly was in control of this ultimate control of the site, the appellee couldn't be held responsible at all. That is correct, Your Honor, and let me explain. The Henselfelds was not penultimately in control. The City of Austin, Texas was. And the original instruction... The City of Austin didn't have anyone on the work site. It was the appellee who was in control of the work site as the general contractor, correct? They were on site as the general contractor, but the City of Austin also had people present on the work site. Competent persons as well as CVI, which was the contractor whose employees were exposed. Let me ask the question a different way. Did your client have the authority to change the dangerous condition that existed? They did, Your Honor. That does get to the argument about whether any purpose that arguably furthers safety is encompassed within the law and can be so interpreted. The answer is no. You have to go to the statute and you have to go to the regulations. If the statute is not amended or the regulations are not properly promulgated or enforced, the question you just raised may be one about can you get more protection by certain actions under the statute, but that doesn't mean they're authorized. Well, because of your reading, your client would have the right, the authority, to change the dangerous condition under this fact pattern. It was aware of the dangerous condition, but in your reading of this, they would not be required to or could be held liable for not changing the dangerous condition. Correct? They could be held liable for not changing the dangerous condition? Well, no. The way that you're reading this is that if someone came out and saw that there was a potential landslide condition that your client was aware of, had the authority to change, they could not issue a citation if they decided not to change it. Correct? No, that is not correct. The issue would be whether their employees were exposed. Exactly. So if their employees were not out there, but even though they were aware of the condition, had the authority to change the condition, if their employees were not exposed to the condition, but other workers at the site were exposed to the condition, your position is that your client shouldn't even be held responsible via citation for not changing the condition. Yes, Your Honor, and that's precisely what the Mellorine decision says. But that doesn't promote safety, does it? One can argue that it does not promote safety, but if it's an impermissible exercise of regulatory enforcement powers, they cannot be enforced if challenged, and they certainly cannot be enforced under the Mellorine decision. I agree with what you said. The statute is where you start, and you were before attacking the Eighth Circuit's analysis of the regulation, but tell me why the other circuits that have looked at the statute and said the statute gives the Secretary authority to issue a citation in this situation. What's wrong with their statutory analysis? Forgetting the regulation for a second. Your Honor, if you look at those decisions, I have read them, I've read all of them, they do little more than analyze the absence of the word his employees from the second portion of 5A. And many of them cite to the Eighth Circuit decision. As Judge Beam's dissent noticed, trying to find ambiguity in the statute appears to be a bureaucratic torturing of linguistic analysis. I agree with Judge Beam's dissent in that case. But there's a more important reason. All of those cases were decided, or did not apply the rule of MCI Telecom. The rule of MCI Telecom is the interpretation cannot go beyond the scope of the ambiguity. What's the ambiguity? The ambiguity is in the word comply in 5A2. What does compliance in 5A2 mean? The government's position says it means whatever the Secretary of Labor thinks makes things safer in what you might do out there. That is not correct. The word comply cannot be tortured and be construed as meaning you must police other entities at the work site. Isn't occupational safety and health standard and then the definition of that where the other side would say the ambiguity exists? Because then the definition of that says you have to provide a safe or helpful employment and places of employment. I thought they were using that statutory definition there of places of employment. They are. I believe, as I understand it, the Secretary's position is places of employment is without regard to whose employees are exposed. We believe that's incorrect because we think there's a total neglect of looking at the legislative history of the act. It's even down to, and I believe this is in the brief. So you think in deciding whether there's ambiguity for Chevron Step 1 we should look at legislative history? Absolutely. I think the Supreme Court has admonished and other courts that you apply canons of construction. You look at legislative history. The court exercises its own analysis and understanding. Then if the court finds there's ambiguity, then you go to Step 2. Is the Secretary of Labor's position reasonable? Here we're arguing there's no ambiguity. Do you know of any cases where the Supreme Court or our court has said the text is ambiguous, it's subject to reasonable debate, but yet the legislative history makes this clear that only one side is right, so we're not going to defer to the agency's view? Well, I believe all of the cases that talk about deference to the Secretary's view or deference in general to agency enforcement interpretations state in the absence of ambiguity, there's nothing to defer to. There's not a space where interpretation is needed from the agency. I agree with that, but you're saying that even if the text is ambiguous, it can become unambiguous, it can become crystal clear, in other words, because of legislative history. You're saying legislative history is part of determining whether it's ambiguous or unambiguous. I would describe that differently, Your Honor, to say there was never an ambiguity to begin with. Because if congressional intent is found in legislative history that explains an arguable ambiguity, the ambiguity never existed. But then you are arguing then that you need to look at legislative intent. You need to look at the legislative history to determine the legislative intent, and then that brings clarity to something that you've determined already just by reading it is unambiguous. Is that what you're saying? It's unambiguous, but I need to refer to the history and the intent to bolster my conclusion that it's unambiguous. Well, I don't think it's quite that, Your Honor. The way I would describe it is that the legislative history is part of always construing congressional intent. It is only in the event that time... But you'd only need to look beyond the statute if the statute was ambiguous. Isn't that right? You begin with an ordinary language reading of the words in the statute. And if that's clear, game over. Right? If the language is clear, there's nothing further that needs to be looked at. Clear and unambiguous. Yes, Your Honor. And if we adopt your argument that the statute is clear, would we not stand apart by my reading from the 2nd Circuit, 4th Circuit, 6th Circuit, 7th Circuit, 8th Circuit, 9th Circuit, and the 10th Circuit, which has said the exact opposite, that the statute is not clear on this point? Well, all of those cases, there is, I think, a useful chart in the brief of the Amici that show none of those cases looked at the legislative history to determine congressional intent. None of them. None of them analyzed the fact that the parlance used in the Senate and floor committee reports talked extensively about employment of... I take you at your word that they didn't do that. So, but your argument is as it stands today, they're wrong and we can get it right by saying that the statute is clear. Yes, Your Honor. Well, we've been standing alone for 40 years, though. Right? Correct, Your Honor. Since the 70s, we haven't been standing alone. The question is whether we're going to still continue to. Indeed, also, if you contrast and compare the Mellorine panel's reasoning for its holding and look at the cases from the other circuits, Mellorine is a far more complete analysis of the statutory history that includes those things that I just mentioned in coming to that  in the other circuits do little more rely on an absence of language without looking at how that language was created and what was intended by Congress. And OSHA understood that in the early days and has just changed course in years since. But it took many years to change course. This wasn't something that happened overnight at OSHA. They figured it out and all of a sudden they were wrong at first in their early documents and they changed them up. They took 20 years changing these documents up to finally get to the current formulation of controlling employers being citable instead of just getting notified about violations by subcontractors and then taking action as appropriate based on that notification. That, too, Your Honor, furthers the purposes of safety and protection of employees in the workplace. Well, back to Judge Graves' point, these other circuits that I've just mentioned, they got it wrong because they did not go to the legislative history. They looked at the statute, couldn't determine that it was clear. Then they failed to go to the legislative history to make it clear and then they reached their decision that it wasn't clear. No, Your Honor. I don't believe that's how in those other cases they arrived at that result. I believe in the majority of those cases, and I'm sorry I can't address them individually, what they did is much like the Eighth Circuit or adopting the analysis of the Eighth Circuit in some instances from some contractors. They said, absence of the words in 5A2 his employees means it's different than 5A1 where his employees is used. One might wonder, was the Scrivener's decision to break that into two paragraphs without any explanation in legislative history that there was an intention to not have his employees apply to all of it? The reason and only reason for that? I guess we'll never know. But the point is those decisions were based on a construction of the statute that endorsed what the Eighth Circuit has said in some context. And if there's something we would never know, that seems to me the definition of ambiguity. Well, I guess I disagree slightly. We don't know why those words are there. Maybe those words aren't there because it's a Scrivener's error and you're ultimately right. Maybe those words weren't there as a deliberate decision to differentiate as these other circuits have held. The fact that we don't know, and that just seems to me the definition of ambiguity. Well, Your Honor, we believe Mellorine examined all of those issues and came to a conclusion. Now, if that is the state of the record and affairs at this point, perhaps the question is then, should another panel be reconsidering Mellorine? The Secretary has made the argument that... Well, that gets into Brand X. We have to defer to that prior decision if it says this is the unambiguous reading of the statute. It's the only reading. Then Chevron changes nothing. And we should absolutely apply our pre-Chevron precedent. But Brand X says it all turns on whether that decision treated as an unambiguous statute. We believe Mellorine satisfies that test. It says that it is not ambiguous. Where does it say that? Well, I read the decision last night. I'm sorry. I can't point it out to you. It says it's a complex question, right? Well, you raise a good point. The Mellorine court talked about a complex question concerning OSHA regulations as standards and evidence of negligence violations. They didn't say the complex question had to do with statutory interpretation of the OSHA Act. But Mellorine did say it was the best reading of the relevant statute, right? And under Brand X, wouldn't they need to have said it was the only permissible reading? I don't think it's got to say it's the only permissible reading. I believe taken as a whole, the Mellorine holding and the explanation as to how the court arrived at it says there is only one construction of the statute. It recognizes that other circuits have gone other ways, which is precisely the state today and in the question that you asked about what other circuits have done. The Fifth Circuit panel in Mellorine said nonetheless the OSHA Act protects only an employer's own employees and provides a detailed explanation, including examination of legislative history. Now again, that takes us to the point of is there an available ambiguity? Our argument is there's not an available ambiguity there that triggers any need to look at reasonability and then deference to the secretary's position. Here's an issue. You have a general duty clause under the statute which says all employers have to make a safe place for everybody. Now that covers a lot of what the secretary is arguing should be the meaning of 5A2, the general duty clause. One follow-up question. I didn't hear you address if we determined that the statute is unclear. As to the secretary's interpretation of the statute in that case, do you believe it was an unreasonable reading of the statute? I do, and a simple reason for that is nobody could know what you're supposed to do. As I'm sure the panel is well aware, the Supreme Court, the justices of the Supreme Court have, I don't know if this is too strong to say, called for a review of Chevron deference. The tendency appears to be if you didn't do it through rulemaking, you don't have it. You didn't do it right. The informal opinions, and in the case of OSHA citation, these are written by non-lawyers. They're the most informal of documents in the labor and employment enforcement world. Congress, when it enacted the act, just like it did under the National Labor Relations Act, knew how to include more than an employer's own employees because it did it under the National Labor Relations Act, but it didn't do it under the OSHA Act. Thank you for the answer. Thank you, Your Honor. Thank you, Your Honor. I'd just like to address a couple of quick points. First, opposing counsel's description of OSHA flip-flopping over the years on controlling employer. What he was referring to that's been in effect since 1999 is simply OSHA's current field operations manual, which is an internal document that OSHA inspectors can consult to make sure that they're issuing efficiently and consistently and that kind of thing. I don't know the exact year that OSHA began first citing controlling employers, but the Second Circuit case that's cited in the brief, Brennan v. Occupational Safety and Health Review Commission from 1975, 513F2nd1032, that was a controlling employer, a general contractor, I think, who left open a rail, or it was actually, I think, a 15-story high building that had no guardrail on the side, and somebody else's employees were exposed to it, and the Second Circuit said, hey, this employer controlled, had access authority. So that's been at least since 1975. And then just quickly on the legislative history, I think it's pretty indisputable that the legislative history, even if it were necessary to turn to it, which we don't think it is, doesn't answer this question one way or the other. Indeed, the Seventh Circuit went so far in the Pitt-Des Moines case to say, in enacting this law, Congress apparently gave little thought to the unique relationship which arises when employees of different employers work in and around the same job site. So I don't think that the legislative history provides any answers here. And again, we urge the court to join the seven other circuits who have upheld this doctrine. Thank you.